IGNITS RATKEWICZ and AMELIA RATKEWICZ, his wife,

*v.*

FRAMISCZK KARA et al.

[Submitted March 17th, 1917. Decided April 20th, 1917.]

1. Where a defendant in a foreclosure suit consulted a solicitor, who advised him to satisfy complainant's claim, and he thereupon requested him to obtain time to make his arrangements to do so, and the solicitor wrote complainant's solicitor to that effect, and the complainant delayed entering his decree *pro confesso* for more than a month, there was no neglect on the part of the defendant's solicitor in not filing an answer which would entitle defendant to have the decree opened so that he might answer.

2. When there was an encroachment of a few inches on defendant's land by a wall of the adjoining property, and defendant brought an action of ejectment therefor, and recovered judgment for possession, defendant's expenses in this respect should not be allowed in abatement of the amount due on the mortgage when the property was conveyed to defendant by complainant, who was foreclosing the mortgage.

---

On order to show cause why final decree should not be opened and leave given to answer. Order discharged.

*Mr. Adrian D. Sullivan,* for the complainants.

*Mr. Robert S. Hartgrove,* for the defendants.

GRIFFIN, V. C.

The complainants filed their bill to foreclose a purchase-money mortgage. The defendant Framisczk Kara was duly served with process, retained counsel, and a decree *pro confesso* and final decree were entered in default of answer. Kara, now, by his petition, asks that the final decree be opened, with leave to answer, on the ground that his solicitor neglected to file an answer, and that he has a good claim for the abatement of the amount appearing to be due on the bond.

The solicitor thus charged is a reputable member of the Passaic bar. A reference to the petition and affidavits filed discloses the fact that the solicitor was retained on or prior to October 17th, 1916, on which day he wrote complainants' counsel for an extension of time to answer to November 15th, which extension was given. Again, on November 27th, 1916, Kara's solicitor wrote complainants' solicitor as follows:

"My Client, Mr. Kara, called at my office this morning, and after going over with him in detail, the subject of his claim under the above foreclosure proceedings, I advised him to make some arrangements about satisfying the *claim of your claim* under the mortgage held by him. Mr. Kara informed me, however, that it will be impossible for him to raise the money at once, but said that if given about one month's time, he was certain he could obtain another loan on his property so as to pay off your client's mortgage.

"To that end, may I ask whether or not your client would be willing to grant Mr. Kara an extension of time for one month within which to raise the money to pay off the mortgage now under process of foreclosure?

"I shall very much appreciate any courtesy you may extend along the lines above suggested and will await your further advice in the matter."

That Kara did confer with his solicitor, and was so advised, and did inform his solicitor, as stated in the letter, he does not deny. It is, therefore, quite apparent that on November 27th Kara abandoned the idea of putting in an answer and merely wanted time to raise the necessary funds to pay the complainant. The complainant delayed entering his decree *pro confesso* until February 7th, 1917, and his final decree until February 16th, 1917.

Upon the foregoing state of facts, it is quite apparent that the solicitor was in nowise guilty of neglect.

The next question to be considered is, Has the defendant such a defence that the court should open the decree and permit him to answer?

The complainants sold the land in question to Kara, giving a full, covenant warranty deed, and taking back a purchase-money mortgage to secure part of the purchase price. Both at the time of the conveyance to Kara, and the acquisition of the property by the complainants, there was a building on the lands adjoining to the south, the foundation wall of which was entirely

under ground. This wall was constructed of rough, irregular stone, points of which, in some places, extended into Kara's land, and at others the wall was at least flush with the dividing line. The greatest encroachment at any point was eight and one-quarter inches. This fact was unknown to the parties until about August, 1915, when a survey was made which disclosed the above situation. The complainants say, on information and belief, that "one Ling, their grantor, offered to remove said encroachment, and had made arrangements to remove said encroachment, and that the said Kara and his wife refused to permit him to enter upon the premises for the purpose." Kara does not deny this statement.

In March, 1916, Kara and his wife began an action of ejectment against the adjoining owners for the possession of a strip of land nine inches in width, running from the front to the rear of the lot, and $1,000 damages. The defendants answered, and the cause coming on to be heard before a circuit judge without a jury, and the defendants admitting the allegations in the complaint, judgment was given in favor of the plaintiffs for six cents damages and the possession of the premises described in the complaint.

While the judgment was for the possession of nine inches in width, it is quite apparent from the affidavit of the engineer who made the survey that the encroachment was not as stated in the complaint, but as above indicated.

The defendants' claim, which they assert against the complainants, is set forth in the eighteenth paragraph of the amended petition as follows:

"I have been put to considerable expense and burthened with a large outlay of money in respect to the said judgment of the said Passaic circuit court, and attempts to clear my property of the said encumbrances."

Such expenses could not be recovered in an action for mesne profits (*Pike* v. *Daly, 54 N. J. Law 4*), and cannot be allowed in abatement of the amount due on a purchase-money mortgage.

The order to show cause will be discharged.